# WILLIAM THEODORE KIDWELL v. STATE OF MARYLAND

[No. 344A, September Term, 1967.]

*Decided September 16, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Leonard S. Freedman* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, Jr., State's Attorney for Anne Arundel County,* and *T. Joseph Touhey, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

William Theodore Kidwell, together with Carson W. Sullivan, Glen A. Sullivan and William Nelson, was indicted for the murder of Raymond Howard on July 10, 1966. Kidwell was convicted of murder in the second degree by a jury. He was sentenced to a term of 15 years. On appeal he raises three contentions which will be set out and discussed hereinafter.

The story of this senseless crime begins when Joseph Stanley Franklin and James Johnson, two Negro youths, went to the Fifth Avenue Cafe to purchase some gin. Franklin went inside while Johnson waited outside talking with Clyde Wandley Toney, Nelson's cousin. Kidwell, Nelson, and one of the Sullivans walked around the side of the building and someone said, "hit that nigger." At this point Kidwell produced a knife and started towards Johnson who ran off down the road. Franklin testified that after he had come out of the bar Johnson wasn't there, and he was approached by Kidwell who said, "Well, if you knew what I knew, you'd run on up the road where your buddy went to." Franklin turned around to walk

away when he was grabbed by Glen Sullivan. He tried to break away, and as he did Kidwell reached out with a knife and cut him. Franklin ran off pursued by the four accused and some other "white men," running through the Hess gasoline station's lot out to Route 175 where he hailed a passing car and left the area.

The deceased, Raymond Howard, who was accompanied by Walter Hall, Louise Hill, and Delores Woodson, all Negroes, had stopped at the Hess gasoline station. As they were about to leave the Hess station, they observed Franklin running across the Hess station's lawn being chased by a number of "white men." The deceased drove out of the station on to Route 175, pulled off to the shoulder of the road, stopped and got out of his car. His three companions remained in the car. He proceeded to the front of his car and spoke to the men who had been chasing Franklin. He was thereafter stabbed and beaten, and when he attempted to escape by running toward the Hess station, he was knocked to the grass and again assaulted. As a result of the assault, he received at least five knife wounds, the most significant being a "deep sucking chest wound" and a "deep penetrating-type wound in the right lateral abdomen, just below the edge of the liver" which caused "massive bleeding" and "internal bleeding." The details of the fatal assault varied somewhat with each witness but the jury could have found that: when the car stopped and the deceased got out somebody told him "to get back into the car" to which he replied "nobody could make him." Someone yelled "hit him" and one of the Sullivans stabbed him in the back. The deceased ran to a grass spot closer to the filling station and Kidwell knocked him down after which he was attacked by the four defendants and possibly others. Kidwell testified, denying that he had a knife, denying that he cut Franklin and denying that he assaulted Howard.

Kidwell alleges error in the refusal to grant his motion to strike the testimony of the various witnesses concerning what transpired in front of the Fifth Avenue or Johnson's Bar. He relies on *Dobbs v. State,* 148 Md. 34, 129 A. 275 which gives the general rule that evidence of unconnected and unrelated crimes are inadmissible unless they show (1) knowledge (ab-

sence of mistake or accident) (2) motive (3) intent (4) common scheme or (5) identification. It would seem that the evidence in this case would come within all five of the exceptions. Kidwell's participation in the first instance showed that his participation in the second was not the result of any mistake or accident; showed that he was motivated by racial prejudice; showed his intent to commit harm and showed a common scheme to chase away members of a minority race from that bar and his identification as a participant in the first affair tended to show his identification as a participant in the second. See *Gilchrist v. State,* 2 Md. App. 635, 236 A. 2d 299, *Hayes v. State,* 3 Md. App. 4, 237 A. 2d 531 and *Wethington v. State,* 3 Md. App. 237, 238 A. 2d 581.

Kidwell's second contention is that his motion for a mistrial should have been granted because the jury had heard evidence, stricken by the court, as to the activities of Franklin and Johnson subsequent to their encounter with Kidwell and the other defendants. The evidence consisted of the fact that they met each other at the 1630 Club, that they went back to the Fifth Avenue Cafe, where they identified Kidwell and that they procured warrants for his arrest for assault. There was no contention that the identification was in any way improper, but the motion to strike was made and granted solely on the basis of relevancy to the particular crime being tried, the murder. In the absence of a contention concerning the unfairness in the identification procedure it is apparent that this testimony was innocuous. The granting or denying of a motion for a mistrial is within the discretion of the trial court. *Barton v. State,* 2 Md. App. 52, 233 A. 2d 330. We see no abuse of the discretion here.

Finally, Kidwell contends that the evidence was insufficient to support his conviction for murder in the second degree and that his motion to acquit should have been granted. The aforegoing recital of facts shows the contention to be without merit. Kidwell was one of the leaders of an attack in which a man was stabbed to death. Although no one actually saw Kidwell personally do the stabbing, he was shown to be in possession of a knife, and willing to use it, immediately before the fatal assault. His actions in knocking the deceased to the ground

and then attacking him would, under the facts of this case, have made him responsible for the death even if the jury believed that he did not personally use his knife. One who is actually present and who wilfully aids or abets the commission of a crime is a principal in the second degree. *Agresti v. State,* 2 Md. App. 278, 234 A. 2d 284.

*Judgment affirmed.*